UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KIMBERLY W.,

                         Plaintiff,

         -against-                                          8:19-CV-0203 (LEK)

ANDREW M. SAUL,
Commissioner of Social Security,

                         Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

## I.     INTRODUCTION

On February 14, 2019, Plaintiff Kimberly W. filed an action in this Court under the

Social Security Act. Dkt. No. 1 ("Complaint"). Plaintiff seeks review of the determination of the

Commissioner of Social Security that she was not disabled during the period March 6, 2014

through the date of the Administrative Law Judge's ("ALJ") January 9, 2018 decision (the

"Relevant Period"). Compl.; see also Dkt. Nos. 9 ("Record"); 13 ("Plaintiff's Brief"); 19

("Defendant's Brief").

For the reasons that follow, the Commissioner's determination of no disability is vacated,

and the matter is remanded for further proceedings.

## II.    BACKGROUND

### A.  Factual Background

Plaintiff is a fifty-one-year-old woman with a "limited education." R. at 35, 82. She has

no past relevant work. Id. at 35. Plaintiff seeks a finding of disability due to HS. Id. at 107.

**B. Procedural History**

*1. Plaintiff's Application*

On March 6, 2014, Plaintiff filed an application for Supplemental Security Income, which the Social Security Administration ("SSA") denied on April 30, 2014. R. at 141–44. Plaintiff then timely requested a hearing before the ALJ, which was held on November 18, 2015. Id. at 79–105, 145–46. On March 29, 2016, the ALJ held a second hearing so that a vocational expert could provide testimony. Id. at 71–78.

*2. The ALJ's First Decision*

On April 26, 2016, the ALJ issued her first decision in this case finding that Plaintiff had not been disabled since March 6, 2014. Id. at 133. She found that Plaintiff had a severe impairment, hidradenitis suppurativa ("HS"),[1] but also concluded that Plaintiff retained the ability to complete light work (save work that required her to lift or reach above her shoulders and bend over continuously). Id. at 120, 123. The ALJ found that Plaintiff had no relevant past work that she could perform, but she could work as a photocopy machine operator, a marker, or routing clerk. Id. 130, 132.

*3. Plaintiff's Appeal of the ALJ's First Decision*

Plaintiff appealed the ALJ's April 26, 2016 decision to the SSA's Appeals Council, which remanded the case back to the ALJ on June 1, 2017 since the ALJ erred in concluding that

---

[1] "Hidradenitis suppurativa (hi-drad-uh-NIE-tis sup-yoo-ruh-TIE-vuh) is a skin condition that causes small, painful lumps to form under the skin. The lumps can break open, or tunnels can form under the skin. The condition mostly affects areas where the skin rubs together, such as the armpits, groin, buttocks and breasts." Mayo Clinic, Hidradenitis suppurativa, https://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/symptoms-causes/syc-20352306 (last visited March 13, 2020).

Dr. Elke Lorensen, a consultative examiner, had found that Plaintiff was solely unable to lift or reach above her shoulders when Dr. Lorensen's opinion simply stated that Plaintiff had "mild to moderate restrictions bending, lifting, and reaching." Id. at 139, 492. The Appeals Council also remanded the action back to the ALJ because she erred in concluding there was sufficient evidence provided by a vocational expert to find that Plaintiff could work as a machine operator, marker, or routing clerk when the SSA's Dictionary of Occupational Titles indicates that such jobs require frequent reaching and Plaintiff has limitations in her ability to reach. Id. at 139–40. The Appeals Council ordered the ALJ to explain why she had narrowly interpreted Dr. Lorensen's opinion on Plaintiff's reaching and lifting limitations and to "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Plaintiff's] occupational base." Id. at 140.

In response to the Appeals Council's remand order, the ALJ on December 19, 2017 elicited further testimony from Plaintiff and from a vocational expert. Id. at 45–57. The vocational expert testified that an individual with the inability to reach or lift overhead could still work as a photocopy machine operator, marker, or routing clerk. Id. at 53–54.

### 4. The ALJ's Second Decision

On January 9, 2018, the ALJ once again found that Plaintiff had not been disabled since March 6, 2014. Id. at 37.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 6, 2014, the date on which Plaintiff applied for disability benefits. Id. at 23. Second, the ALJ found that Plaintiff had a severe impairment, HS. Id. Third, the ALJ found that Plaintiff did not have an impairment that met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (§§ 404.1520(d), 404.125, 404.1526).
Id. at 26–27. Fourth, the ALJ found that, during the Relevant Period, Plaintiff had the residual

functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except

that Plaintiff was unable to lift or reach above her shoulders and could not push or pull. Id. at 27.

The ALJ also found Plaintiff could "frequently, but not continuously, bend." Id. While the ALJ

found that Plaintiff did not have any past relevant work, she found that Plaintiff could work as a

photocopy-machine operator, marker, or routing clerk. Id. at 35–36.

### 5. *Plaintiff's Appeal of the ALJ's Second Decision*

Plaintiff appealed the ALJ's second decision, but the Appeals Council denied Plaintiff's

request for review. Id. at 1–3.

### C. The Evidence at Issue in the ALJ's Second Decision

### 1. *Plaintiff's Testimony and Other Statements*

Plaintiff testified she has "very few" good days because of her HS, and that it had

"affected [her] [in] so many ways." R. at 47, 52. She clarified:

> I'm in pain all the time. I can't sleep. I am emotionally distraught
> because of this. I don't want to go out anywhere. The pain is just
> unbearable at times. I can't sit for too long. I can't stand for too long.
> I can't reach for things, grab for things for too long. [The HS rashes]
> bleed. Like I said, secretion comes out. I can't wear anything, you
> know, clear or anything like that because all of a sudden, I'm just
> soaking wet underneath the arms, the breasts, down below. Through
> my navel, I bleed. It's just—it's been very, very—been very hard for
> me, not only physically, but like I said, emotionally as well. This is
> not a very good thing to have. It's something that nobody would like
> to have. I just— like I said, I can't sleep whatsoever. I can't even turn,
> nothing.

Id. at 47.

Based on statements Plaintiff provided in a report of her daily activities and to Dr. Lorensen, Plaintiff is capable of performing some physical activity when not in pain, such as driving; attending church; attending scheduled medical appointments; showering, dressing, vacuuming, doing the dishes, and doing the laundry on a daily basis; caring for her granddaughter on a day-to-day basis; preparing simple meals a few times per week; and grocery shopping once per month. Id. at 337–41, 490.

### 2. Dr. Lorensen

Dr. Lorensen conducted an examination of Plaintiff on April 25, 2014. See R. at 489–92. She found "no gross limitations sitting, standing, and walking" along with "mild to moderate restrictions bending, lifting, and reaching." Id. at 492.

### 3. Dr. Healey

On April 4, 2016, Dr. Gregory Healey, who had served as Plaintiff's treating physician for the previous four years, prepared a medical source statement. R. at 385–468, 581–681. Dr. Healey noted that Plaintiff "has significant pain from [] lesions in her axillae [i.e., armpits], chest + groin + thighs." Id. at 681. He opined that Plaintiff could not sit, stand, or walk for more than two hours in an eight-hour workday. Id. at 680. He also found that Plaintiff could frequently lift or carry up to ten pounds, occasionally lift or carry up to twenty pounds, and never lift or carry fifty pounds or more. Id. Dr. Healey further opined that Plaintiff could occasionally bend and crawl, but could never squat or climb. Id. He found that while Plaintiff could perform fine manipulation and grasp objects with both hands, she could not push or pull objects with either hand. Id. Dr. Healey concluded, "This is the worst case of Hidradenitis Suppurativa that I have

5

ever seen in 38 years of medical practice. [Plaintiff] is most certainly disabled from employment of any kind for any number of hours per week." Id. at 681.

### 4. Dr. Pierson

On April 4, 2016, Dr. Joseph C. Pierson, who had served as Plaintiff's treating dermatologist for the previous two-and-a-half years, issued a medical source statement. R. at 679. Dr. Pierson opined that Plaintiff continues to suffer from an aggressive form of HS that provides Plaintiff with "about 5 new 'boils' per month." Id. He found the disease in her armpits, under her breasts, in her groin, and on her buttocks. Id.

On December 8, 2017, Dr. Pierson completed another medical source statement that opined on the severity of Plaintiff's HS, but deferred to Dr. Healey on any functional limitations Plaintiff may have as a result of her disease. Id. at 62–66. Dr. Pierson determined that Plaintiff's skin disorder had a "guarded" prognosis. Id. at 62. He also observed that Plaintiff had "pain" and "decreased range of motion." Id. He also found that Plaintiff had "tender lumps [and] draining sores of armpits, groin, and skin under breasts." Id. Dr. Pierson concluded that Plaintiff's condition could be expected to last at least twelve months. Id. The ALJ declined to consider this medical source statement in her January 9, 2018 decision because she found that Plaintiff had not informed the ALJ about the statement or provided the actual statement within five business days of the December 19, 2017 hearing. Id. at 20–21.

## III. LEGAL STANDARD

### A. Standard of Review

When a district court reviews an ALJ's decision, it must determine whether the ALJ applied the correct legal standards and whether his or her decision is supported by substantial

evidence in the record. 42 U.S.C. § 405(g). Substantial evidence amounts to "more than a mere scintilla," and it must reasonably support the decision maker's conclusion. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). A court will defer to the ALJ's decision if it is supported by substantial evidence, "even if [the court] might justifiably have reached a different result upon a *de novo* review." Sixberry v. Colvin, No. 12-CV-1231, 2013 WL 5310209, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). However, a court should not uphold the ALJ's decision—even when there is substantial evidence to support it—if it is based on legal error. Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998).

### B. Standard for Benefits

According to SSA regulations, a disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). An individual seeking disability benefits "need not be completely helpless or unable to function." De Leon v. Sec'y of Health and Human Servs., 734 F.2d 930, 935 (2d Cir. 1984). In order to receive disability benefits, a claimant must satisfy the requirements of a five-step evaluation process. 20 C.F.R. § 404.1520(a)(1). If the ALJ is able to determine that the claimant is disabled or not disabled at any step, the evaluation ends. § 404.1520(a)(4). Otherwise, the ALJ will proceed to the next step. Id.

At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful work activity." § 404.1520(a)(4)(i). If so, the claimant is not disabled under SSA

regulations. Id. At step two, the ALJ must determine whether the claimant has an impairment, or combination of impairments, that is "severe," i.e., that "significantly limits" the claimant's "physical or mental ability to do basic work activities." §§ 404.1520(a)(4)(ii), 416.920(c). If the claimant does not have such impairment(s), the claimant is not disabled under SSA standards. Id. At step three, the ALJ asks whether the claimant's medically determinable physical or mental impairment(s) are as severe as impairment(s) of the requisite duration listed in Appendix 1 of Subpart P of § 404 (the "Listing"). § 404.1520(a)(4)(iii); 20 C.F.R., Pt. 404, Subpt. P, App. 1. If the claimant's impairment(s) are as severe, then the claimant is disabled. § 404.1520(a)(4)(iii). If not, the ALJ moves to step four and reviews the claimant's RFC. § 404.1520(a)(4)(iv). A claimant is not disabled under SSA standards if she can perform past work. Id. If the claimant cannot perform her past work, the ALJ decides at step five whether adjustments can be made to allow the claimant to work somewhere in a different capacity. § 404.1520(a)(4)(v). If the claimant "cannot make an adjustment to other work," then the claimant is disabled under SSA standards. Id. In the first four steps, the claimant bears the burden of proof; at step five, the burden shifts to the SSA. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

## IV. DISCUSSION

Plaintiff argues that the ALJ's January 9, 2018 decision erred in failing to: (1) find that Plaintiff has a presumed disability pursuant to Listing 8.06; (2) follow the treating physician rule by subordinating the opinions of her treating physicians, Drs. Healey and Pierson, to that of Dr. Lorensen, a consultative examiner, instead; (3) follow the Appeals Council's June 1, 2017

remand order; and (4) consider Dr. Pierson's December 8, 2017 medical source statement. Pl.'s Br. at 12–22. The Court will consider each of these arguments in turn.

## A. Listing § 8.06

Plaintiff claims that the ALJ erred in finding her impairment did not satisfy the requirements of Listing § 8.06 (hidradenitis suppurativa). Pl.'s Br. 14–17. The Court disagrees.

To show that an impairment meets or is medically equal to a listing, a claimant must show that her impairments "meet all of the specified criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990); accord Solis v. Berryhill, 692 F. App'x 46, 48 (2d Cir. 2017). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Barber v. Comm'r of Soc. Sec., No. 15-CV-338, 2016 WL 4411337, at *3 (N.D.N.Y. July 22, 2016) (internal quotation marks omitted) (quoting Sullivan, 493 U.S. at 530), report and recommendation adopted sub nom. Barber v. Colvin, No. 15-CV-338, 2016 WL 4402033 (N.D.N.Y. Aug. 18, 2016).

Listing § 8.06 requires a showing of "Hidradenitis suppurativa, with extensive skin lesions involving both axillae,[2] both inguinal[3] areas or the perineum[4] that persists for at least 3 months despite continuing treatment as prescribed." Listing § 8.06. "Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious

---

[2] "Axillae" refers to a person's armpits. Merriam-Webster, Axilla, https://www.merriam-webster.com/dictionary/axillae (last visited March 13, 2020).

[3] "Inguinal" refers to the person's groin. Merriam-Webster, Inguinal, https://www.merriam-webster.com/dictionary/inguinal (last visited March 13, 2020).

[4] "Perineum" refers to the area between the anus and the scrotum or vulva. Merriam-Webster, Perineum, https://www.merriam-webster.com/dictionary/perineum (last visited March 13, 2020).

limitation." Listing § 8.00(C)(1). Examples of extensive skin lesions for the purposes of Listing § 8.06 include (but are not limited to):

> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

Id.

The ALJ found that Plaintiff failed to satisfy Listing § 8.06 because, among other reasons, "the record fails to show skin lesions are 'extensive' as required by the listing." R. at 26. Indeed, Plaintiff has failed to proffer substantial evidence that suggests Plaintiff's HS has "result[ed] in [] very serious limitation[s]" and so may be considered "extensive." Listing § 8.00(C)(1). Evidence in the record suggests Plaintiff's HS did not very seriously limit her for at least three months, as required by Listing § 8.06. While, as described further below, Dr. Healey's and Dr. Pierson's observations of Plaintiff's HS suggest her disease has remained acute over time, their medical findings do not show that Plaintiff's HS "causes serious limitation in his joints, extremities, or ability to ambulate" or otherwise very seriously limit Plaintiff for the purposes of the Listing. See Mannion v. Comm'r Soc. Sec. Admin., No. 17-CV-8, 2017 WL 5598810, at *3 (D. Or. Nov. 21, 2017) (concluding the plaintiff's medical records did not demonstrate his HS satisfied the requirements of Listing § 8.06), aff'd sub nom. Mannion v. Berryhill, 772 F. App'x 483 (9th Cir. 2019). Thus, the ALJ did not err in finding that Plaintiff's HS does not satisfy the requirements

of Listing § 8.06. See Fullen v. Colvin, No. 15-CV-675, 2016 WL 6205292, at *4 (W.D. Pa. Oct. 24, 2016) (finding Listing § 8.06 "requires that the skin lesions reach an equivalent level of severity to satisfy the Listing. The mere presence of persistent skin lesions does not meet that requirement"), aff'd sub nom. Fullen v. Comm'r of Soc. Sec., 705 F. App'x 121 (3d Cir. 2017).

### B. The ALJ's Treatment of Medical Opinions

In finding no disability, the ALJ did not afford Dr. Healey's and Dr. Pierson's opinions controlling weight (even though they were Plaintiff's treating physicians) because she found the opinions to be insufficiently supported. R. at 34. The ALJ accorded "great weight" to Dr. Lorensen's opinion because it "is generally supported by the objective medical evidence that indicates that the claimant is precluded from performing very heavy, heavy, and medium work activity due to the combination of her severe and non-severe physical impairments, but otherwise retains the maximum residual functional capacity to perform a range of light work activity." Id. at 31.

Plaintiff claims that the ALJ's RFC determination is not supported by substantial evidence because she failed to properly weigh the opinions of Plaintiff's treating physicians, Drs. Healey and Pierson. Pl.'s Br. at 17–19. The Court agrees.

SSA regulations provide that "opinions from [a claimant's] treating sources" are "give[n] more weight" than other sources, and are even given "controlling weight" when the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. § 404.1527(c)(2). "[G]ood reasons" must be given for declining to afford a treating physician's opinion controlling weight. §§ 404.1527(c)(2), 416.927(c)(2); Schisler v. Sullivan, 3 F.3d 563,

568 (2d Cir. 1993). The Second Circuit Court has noted that it "do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion." <u>Morgan v. Colvin</u>, 592 F. App'x 49, 50 (2d Cir. 2015) (quoting <u>Halloran v. Barnhart</u>, 362 F.3d 28, 33 (2d Cir. 2004)).

Here, the ALJ failed to provide good reasons for not giving Dr. Healey's and Dr. Pierson's opinions controlling weight. First, the ALJ incorrectly concluded that Dr. Healey's and Dr. Pierson's opinions were inadequately supported by "the scant chronically positive clinical findings noted on repeat physical exams . . . ." R. at 34. Rather, Dr. Healey's and Dr. Pierson's opinions are well-supported by their longitudinal observations of Plaintiff's condition. For example, Dr. Healey's treatment notes indicate in October 2014 that, despite treatment, Plaintiff's condition had deteriorated over a two-year period to the point that Plaintiff's HS was "the most severe" Dr. Healey had ever seen. <u>Id.</u> at 608. At that point, Dr. Healey found Plaintiff had HS in both armpits, under both breasts, in her groin, and down parts of her thighs. <u>Id.</u> Despite further treatment, Dr. Healey concluded once again in April 2016 that Plaintiff had "the worst case of HS that I have ever seen in 35 years of medical practice." <u>Id.</u> at 681. Dr. Pierson's treatment notes indicate in December 2014 that while Plaintiff's prescribed medications "help a fair amount," Plaintiff's condition remained "frustrating." <u>Id.</u> at 523. At that time, Dr. Pierson also observed HS under Plaintiff's breasts, on her buttocks and stomach, in her armpits and genital area, and spreading to her face. <u>Id.</u> at 519. And in April 2016, Dr. Pierson found that Plaintiff continued to suffer from an aggressive form of HS that provides Plaintiff with "about 5 new 'boils' per month." <u>Id.</u> at 679. He observed the skin disorder in Plaintiff's armpits, under her breasts, in her groin, and on her buttocks. <u>Id.</u>

Second, the ALJ improperly relied on snapshots of Plaintiff's medical history to discount the value of Dr. Healey's and Dr. Pierson's opinions. For instance, the ALJ observed that Plaintiff's consultative examination with Dr. Lorensen in April 2014 revealed "no sign of new or active lesions, cellulitis, infection or drainage . . . no redness, swelling, edema, or effusion." Id. at 31 (citing id. at 490–91). But by October 2014, Plaintiff's condition had worsened to the point that Dr. Healey observed "the most severe" form of HS he had ever seen. Id. at 608. Dr. Lorensen's one-time examination of Plaintiff cannot constitute substantial evidence supporting the ALJ's RFC determination. See Diaz v. Astrue, 2009 WL 2601316, at *4 (E.D.N.Y. Aug. 24, 2009) (concluding that the opinion of a consultative examiner was not substantial evidence supporting the ALJ's RFC determination because the plaintiff's condition deteriorated after one-time consultative exam); see also Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990) ("[A] consulting physician's opinions . . . should be given limited weight" because "consultative exams are often brief, are generally performed without the benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day"). As another example, while, according to the ALJ, the record shows that Plaintiff did not present with new lesions between July 2015 and September 2015, R. at 27, both Dr. Healey and Dr. Pierson observed in April 2016 that Plaintiff's condition had once again worsened despite treatment. See id. at 679, 681. Consequently, had the ALJ considered the record "in its entirety" (which she should have done), see Melendez v. Astrue, 630 F. Supp. 2d 308, 315 (S.D.N.Y. 2009) (citing § 404.1520(a)(3)); see also Tim v. Colvin, No. 12-CV-1761, 2014 WL 838080, at *7 (N.D.N.Y. Mar. 4, 2014) ("[A]n administrative law judge may not 'cherry-pick' medical opinions that support his or her opinion while ignoring opinions that do not." (quoting Scott v.

<u>Astrue</u>, 647 F.3d 734, 740 (7th Cir. 2011)), she would have observed that Plaintiff's disease has remained acute over time.

Third, the ALJ wrongly discounted the value of Dr. Healey's opinion because he "is not a specialist who specifically treats patients for skin disorders." R. at 32. While the ALJ was correct that she may consider whether a physician is a specialist when weighting that doctor's medical opinion, <u>Schaal</u>, 134 F.3d at 503; <u>see also</u> § 404.1527(c)(2), she may only do so if she first properly determined that Dr. Healey's opinion was not entitled to controlling weight. <u>See</u> <u>Martel v. Colvin</u>, No. 13-CV-229, 2014 WL 5590558, at *4 (D. Conn. Nov. 3, 2014) ("Factors such as whether or not the doctor is a specialist become relevant *only if* the treating doctor's opinion is not entitled to controlling weight." (emphasis in original) (citing § 404.1527(c))). Because the ALJ should have assigned Dr. Healey's opinion controlling weight, she incorrectly assigned little weight to that opinion in part because Dr. Healey is not a dermatologist. The ALJ also discounted the value Dr. Healey's opinion because Dr. Pierson, unlike Dr. Healey, did not conclude that Plaintiff's case of HS was the worst he had ever seen in his career. R. at 32. Even if Dr. Pierson did not consider Plaintiff's HS the worst form of the disease he had ever seen (and the record does not indicate Dr. Pierson ever made a statement to this effect), it does not necessarily follow that Dr. Pierson assessed Plaintiff's illness to be less severe than Dr. Healey did. Indeed, both physicians found HS in multiple areas of Plaintiff's body when they examined her in late 2014. <u>Id.</u> at 519, 608. And Dr. Pierson found HS lesions in *more* areas of Plaintiff's body than did Dr. Healey. <u>Compare</u> <u>id.</u> at 519 <u>with</u> <u>id.</u> at 608.

Fourth, the ALJ accorded little weight to Dr. Healey's and Dr. Pierson's opinions in part because they purportedly opined on the ultimate issue of whether Plaintiff is disabled, a

14

determination that is reserved to the Commissioner alone. Id. at 32. The ALJ points to Dr.

Healey's October 16, 2014 statement that Plaintiff is "certainly not able to work" because of her

HS and his April 4, 2016 statement that "[t]his is the worst case of Hidradenitis Suppurativa that

I have ever seen in 35 years of medical practice. [Plaintiff] is most certainly disabled from

employment of any kind for any number of hours per week." Id. (citing id. at 608, 681). She also

points to Dr. Pierson's April 4, 2016 statement that Plaintiff continues to suffer from an

aggressive form of HS that provides Plaintiff with "about 5 new 'boils' per month." Id. (citing id.

at 679). The ALJ, however, mischaracterizes the two physicians' opinions. Drs. Healey and

Pierson were "not offering an opinion on the ultimate issue of legal disability, but rather on the

nature and severity of" Plaintiff's condition. See Hall v. Astrue, No. 08-CV-24, 2009 WL

3614529, at *7 (W.D.N.Y. Oct. 26, 2009) (citing Green-Younger v. Barnhart, 335 F.3d 99, 106

(2d Cir. 2003)) (finding a doctor's statements that the plaintiff will "probably be permanently

disabled" and is "disabled from work" to be proper opinion evidence). Hence, the ALJ should not

have discounted their opinions on the basis that they provided inappropriate legal conclusions.

Finally, the ALJ also specifically rejected the conclusions found in Dr. Healey's April 4,

2016 medical source statement because they were contradicted by Plaintiff's testimony and other

statements she made that she can perform some daily activities. R. at 32. While Plaintiff admitted

she has the ability to perform some daily activities, R. at 337–41, 490, the ALJ's "heavy reliance

on Plaintiff's reported daily activities of self-care, child-care, and hobbies does not provide a

sufficient basis for discounting almost entirely the well-supported expert testimony of licensed

[physicians] regarding Plaintiff's ability to sustain a *job*." Mahon v. Colvin, No. 15-CV-02641,

2017 WL 1232471, at *15 (E.D.N.Y. Mar. 31, 2017) (emphasis in original). Indeed, as another

court in this Circuit has observed, a plaintiff's "reports of her daily activities by themselves are not substantial evidence that she was not disabled and are insufficient to justify according [a treating physician's] opinion limited weight," because "a claimant need not be an invalid to be found disabled." Nusraty v. Colvin, 15-CV-2018, 2016 WL 5477588, *12 (E.D.N.Y. Sept. 29, 2016) (internal quotation marks omitted) (quoting Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)). "When a disabled person gamely chooses to endure pain in order to pursue important goals, such as attending church and helping his wife on occasion go shopping for their family, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working." Balsamo, 142 F.3d at 81–82 (internal quotation marks omitted) (quoting Nelson v. Bowen, 882 F.2d 45, 49 (2d Cir. 1989)).

In sum, "the ALJ has disregarded the opinion[s] of [] treating physician[s] with [] relevant lengthy doctor-patient treatment relationship[s] without providing the necessary good reasons to award [their] views less than controlling weight." No. 18-CV-630, 2019 WL 4415531, at *5 (N.D.N.Y. Sept. 16, 2019) (Kahn, J.). Accordingly, the case must be remanded to allow the ALJ to accord proper weight to the medical opinions in the record and, with the proper weight assigned, make a new finding as to disability.

### C. The Appeals Council's Remand Order

On June 1, 2017, the SSA's Appeals Council remanded Plaintiff's case back to the ALJ. R. at 139–40. The Appeals Council ordered the ALJ to explain why she had narrowly interpreted Dr. Lorensen's opinion to solely include limitations on lifting and reaching above her shoulders when Dr. Lorensen's opinion simply stated that Plaintiff had "mild to moderate restrictions bending, lifting, and reaching." Id. at 140. It also ordered the ALJ to seek additional evidence

from a vocational expert to determine whether Plaintiff could work as a machine operator, marker, or routing clerk when the SSA's Dictionary of Occupational Titles indicates that such jobs require frequent reaching and Plaintiff has limitations in her ability to reach. Id.

Regarding the first part of the Appeals Council's order, Plaintiff argues that the ALJ should have had Dr. Lorensen clarify on remand whether her opinion indicated Plaintiff is solely unable to reach or lift above her shoulders or unable to lift or reach in all directions. Pl.'s Br. at 20. Rather than contact Dr. Lorensen to have her clarify her opinion, the ALJ stated in her January 8, 2018 decision that she had "interpreted [Dr. Lorensen's] opined reaching limitations to reference only a limitation against reaching overhead due to the fact that the claimant testified that she moved things down low in the kitchen in order to access them there indicating she is reaching and can reach below the shoulder level. This indicates that the claimant is not unable to reach in all other directions." R. at 30–31. The Court finds the ALJ failed to abide by the Appeals Council's remand order by not having Dr. Lorensen clarify her opinion. While Plaintiff testified in 2015 that she could place items down low in the kitchen, id. at 102, Dr. Lorensen issued her opinion *one year earlier*, id. at 492. Therefore, Dr. Lorensen could not have considered Plaintiff's testimony regarding her ability to place items down low in the kitchen when formulating her opinion. Hence, the ALJ determined Plaintiff is unable to lift or reach above her shoulders based on her own medical judgment, not on that of Dr. Lorensen. But this the ALJ cannot do. See Snyder v. Colvin, No. 13-CV-585, 2014 WL 3107962, at *4 (N.D.N.Y. July 8, 2014) (ruling that an ALJ "interject[ing] her own lay medical judgment" is impermissible).

And regarding the second part of the Appeal's Council's order, Plaintiff argues that the ALJ should have elicited testimony from a vocational expert on whether she would be able to

work as a machine operator, marker, or routing clerk if Plaintiff is unable to reach in all directions. Pl.'s Br. at 21. Instead, the ALJ asked the vocational expert whether Plaintiff is able to work in these occupations if Plaintiff were only limited to reaching "overhead." R. at 53–54. The Court concludes the ALJ once again failed to abide by the Appeals Council's remand order by limiting her questioning to Plaintiff's ability to reach only in one direction. The Appeals Council ordered the ALJ to ask the vocational expert whether Plaintiff could work in certain occupations given "the specific capacity/limitations established by the record as a whole." Id. at 140. Although Plaintiff testified in 2015 that she could place items down low in the kitchen, id. at 102, she testified in 2017 that she "can't reach for things" in any direction, id. at 47. Plaintiff's testimony accords with Dr. Healey's and Dr. Pierson's opinions suggesting that Plaintiff's disease has remained acute over time. And Dr. Lorensen's opinion likely indicates Plaintiff is unable to reach in all directions, see id. at 492, (though, as discussed above, Dr. Lorensen needs to confirm whether she in fact made this finding). Because the record overall suggests Plaintiff is limited in her ability to reach in all directions, the ALJ should ask a vocational expert whether Plaintiff is able to work as a machine operator, marker, or routing clerk if Plaintiff is unable to reach in all directions.

"The failure of an ALJ to abide by the directives in an Appeals Council remand order constitutes legal error requiring remand." Ellis v. Colvin, 29 F. Supp. 3d 288, 299 (W.D.N.Y. 2014) (citing Savino v. Astrue, No. 07-CV-4233, 2009 WL 2045397, at *9 (E.D.N.Y. July 8, 2009)). Therefore, the case must also be remanded to the ALJ so she may comply with the Appeals Council's June 1, 2017 remand order.

### D. Dr. Pierson's December 8, 2017 Medical Source Statement

On December 12, 2017, Plaintiff's attorney, Christopher E. Cooper, sent the ALJ a letter informing her that Plaintiff had yet to receive an additional medical source statement from Dr. Pierson even though Mr. Cooper had requested a statement from him on September 5, 2017 and again on December 1, 2017. R. at 379. The statement, which was dated December 8, 2017, finally arrived at Mr. Cooper's office on December 13, 2017, and Mr. Cooper provided the statement to the ALJ at Plaintiff's December 19, 2017 hearing. Id. at 45–46.

The ALJ declined to consider Dr. Pierson's December 8 statement because Plaintiff failed to inform the ALJ about the statement or provide the actual statement within five business days of the hearing date, December 19. Id. at 20–21. SSA regulations require "[e]ach party . . . to ensure that the administrative law judge receives all of the evidence and [to] inform [the ALJ] about or submit any written evidence . . . no later than 5 business days before the date of the scheduled hearing. If [the party] do[es] not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence unless the circumstances described in paragraph (b) of this section apply." § 416.1435(a). Plaintiff does not quibble with the conclusion that she did not submit Dr. Pierson's statement within five business days of the December 19 hearing. Rather, Plaintiff argues she timely "informed [the ALJ] about" the statement since Mr. Cooper notified the ALJ about the statement on December 12, 2017, which was five business days before the December 19, 2017 hearing. Pl.'s Br. at 24; see also § 416.1435(a). In her January 8, 2018 decision, the ALJ found that Mr. Cooper did not actually inform her of Dr. Pierson's statement for the purposes of § 416.1435(a) since the statement "did not exist at the time" Mr. Cooper notified the ALJ about it. Although the record is unclear, the Court assumes

the ALJ is aware that Dr. Pierson's December 8 statement physically existed at the time Mr. Cooper informed her about it on December 12. Thus, by "did not exist" the Court presumes the ALJ meant that Mr. Cooper did not know the statement existed when he purported to inform her about it on December 12 since he did not yet have the statement in his possession.[5] Therefore, the question before the Court is whether Plaintiff timely informed the ALJ about Dr. Pierson's statement even though Mr. Cooper did not have a copy of the statement when he did so.

As another court has observed regarding the meaning of "inform" as used in § 416.1435(a):

> To 'inform' the Commissioner 'about . . . written evidence . . .' means to 'impart knowledge of some particular fact, occurrence, [or] situation' concerning the evidence. Oxford English Dictionary (online ed.). Evidence, in turn, 'is anything [the claimant] or anyone else submits to us or that we obtain that relates to your claim,' including objective medical evidence such as laboratory findings, medical opinions about what the claimant can still do, medical history, and treatments. 20 C.F.R. § 416.913; see also 20 C.F.R. § 416.912 (2016). To satisfy § 416.1435, then, a claimant must impart some knowledge about the particular facts of the written evidence—even such basic information as that the evidence consists of medical opinions or treatment records would constitute particular facts about the evidence.

Hight v. Comm'r of Soc. Sec., No. 18-CV-11817, 2019 WL 4866746, at *11 (E.D. Mich. June 25, 2019), report and recommendation adopted by No. 18-CV-11817, 2019 WL 3940854 (E.D. Mich. Aug. 21, 2019).

---

[5]  This interpretation of the ALJ's decision accords with how the parties have briefed the issue on whether the ALJ properly declined to consider Dr. Pierson's December 8 statement since neither party addresses the fact that the statement did physically exist prior to Mr. Cooper's December 12 letter to the ALJ.

In his December 12 letter to the ALJ, Mr. Cooper notified the ALJ that he had requested evidence from Dr. Pierson and that the evidence consisted of an additional medical source statement from the doctor. R. at 379. In doing so, he "impart[ed] some knowledge about the particular facts of the written evidence" and so timely informed the ALJ of the statement for the purposes of § 416.1435(a). See Hight, 2019 WL 4866746, at *11 (concluding that a plaintiff can timely inform an ALJ about evidence that he has yet to receive, but finding the plaintiff had not done so in the case at bar since he vaguely told the ALJ that "records/evidence" from a physician were forthcoming); Drogo v. Comm'r of Soc. Sec., No. 18-CV-6105, 2019 WL 2569599, at *4 (W.D.N.Y. June 21, 2019) (finding that the plaintiff timely informed the ALJ about evidence he had yet to receive). The Commissioner's reliance upon Arthur L. v. Saul, No. 18-CV-304, 2019 WL 3213229, at *1 (N.D.N.Y. July 17, 2019) in support of his argument that Plaintiff did not timely inform the ALJ about Dr. Pierson's statement is misplaced. In Arthur L., the parties argued over an issue not present in this case, namely whether a party could submit evidence that did not yet "exist" five business days before a hearing under § 416.1435(b)[6] *even when* the party

---

[6] § 416.1435(b) states:

> If you have evidence . . . but you have missed the deadline described in paragraph (a) of this section, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:
>
> (1) Our action misled you;
>
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

did not inform the ALJ that there was new evidence forthcoming under § 416.1435(a). 2019 WL 3213229, at *1. Here, the issue is whether a party under § 416.1435(a) can still inform the ALJ about evidence that may not yet exist. Consequently, Arthur L. is inapplicable to this case.

The Commissioner argues that even if the ALJ erred in not considering Dr. Pierson's December 8 statement, such error was harmless. Def.'s Br. at 25. While the Commissioner is correct that remand is only required "where there is significant chance that, but for the error, the agency might have reached a different result," Edwards v. Astrue, No. 10-CV-1017, 2011 WL 3490024, at *9 (D. Conn. Aug. 10, 2011) (citing N.L.R.B. v. Am. Geri–Care, Inc., 697 F.2d 56, 64 (2d Cir. 1982)), here the ALJ's error was harmful to Plaintiff.

In his December 8 statement, Dr. Pierson determined that Plaintiff's skin disorder had a "guarded" prognosis and could be expected to last at least twelve months. R. at 62. These findings suggest Plaintiff's disease had not improved since Dr. Healey first diagnosed Plaintiff with HS in 2012, id. at 410, and would remain acute in the future. Given the ability of Dr. Pierson's statement to aid the ALJ in determining whether Plaintiff is disabled, the matter must also be remanded to the ALJ so she can consider the statement. See Drogo, 2019 WL 2569599, at *5 (finding harmful error in the ALJ's failure to consider evidence about which the plaintiff had timely informed the ALJ).

V.    CONCLUSION

Accordingly, it is hereby:

---

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier . . . .

**ORDERED**, that the Commissioner's determination of no disability is **VACATED**, and the matter is **REMANDED** for further proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      March 20, 2020
              Albany, New York

Lawrence E. Kahn
U.S. District Judge